IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GC CORPORATION,       )
       Plaintiff,     )
              )
              )
              )   No. 08 CV 3716
              )
              )
              )
DANIEL OROZCO,       )
       Defendant.    )

## ANSWER TO PLAINTIFF'S COMPLAINT AT LAW

NOW COMES the Defendant, DANIEL OROZCO, by and through his attorneys, CUNNINGHAM, MEYER & VEDRINE, PC, states as follows as his Answer to Plaintiff's Complaint at Law:

### JURISDICTION AND VENUE

1.   GC Corp. is a corporation incorporated under the laws of Idaho with its principal place of business located in Boise, Idaho.

   **ANSWER:**   This defendant lacks sufficient knowledge to truthfully admit or deny this allegation.

2.   Defendant, Daniel Orozco, is an individual, who is a resident of Chicago, Cook County, Illinois, and has regularly conducted business within the state of Illinois.

   **ANSWER:**   Admit.

### THE PARTIES

3.   Jurisdiction exists pursuant to 28 U.S.C § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs and diversity exists between the Plaintiff and Defendant.

   **ANSWER:**   Deny.

4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as the transactions and acts complained of occurred in this District, and the Defendant resides and/or does substantial business within this District.

   **ANSWER:**   Admit.

1

## GENERAL ALLEGATIONS

5.    On or about July 31, 2007 Defendant contacted GC Corp. to inquire about planning, design and construction services GC Corp. can provide in connection with a condominium construction project (hereinafter "San Carlos Project") Defendant intended to develop in San Carlos, Mexico.

**ANSWER:**    Deny.

6.    On or around September 22, 2007, representatives of GC Corp. met with Defendant in San Carlos, Mexico.

**ANSWER:**    Admit.

7.    During this initial meeting, Defendant advised GC Corp. that he would close on the property designated for the San Carlos Project on or around October 15, 2007, and that investors were "ready to open the vault doors."

**ANSWER:**    Deny.

8.    Thereafter, GC Corp. offered its services for the San Carlos Project, and Defendant accepted those services.

**ANSWER:**    Deny.

9.    As a result of the meeting with Defendant in San Carlos, GC Corp. provided services and work product for the planning and design of said San Carlos Project, and Defendant promised to pay for such services and work product.

**ANSWER:**    Deny.

10.    Between September 2007 and November 2007, and in furtherance of their agreement, a series of electronic mail and telephone communications were exchanged between Defendant and GC Corp., which included the following:

    a)    On or around September 25, 2007, Defendant asked GC Corp. to begin working on a feasibility study and plan for the San Carlos Project.

    b)    On or around September 29, 2007, Defendant sent GC Corp. a general list of design and marketing points.

    c)    On or around October 8, 2007, GC Corp. sent Defendant a list of services offered and requested a response from Defendant.

    d)    Defendant accepted GC Corp.'s offer of services and requested that GC Corp. include said services into a budget for the planning and design phase of the Project.

    e)    On or around October 25, 2007, GC Corp. requested a memorialized commitment from Defendant that Defendant

2

                       intended to retain GC Corp. to provide construction management services for the San Carlos Project, because if so, GC Corp. would be forced to decline a request from another developer to provide such services for a project in Jacona, Michoacan (hereinafter, "Jacona Project").

       f)        On or around October 25, 2007, Defendant agreed to have a letter of intent executed to secure GC Corp.'s construction management services on the San Carlos Project.

       g)       On or around October 25, 2007, Defendant requested GC Corp. to continue working on the San Carlos Project to the exclusion of other alternative development projects.

       h)       On or around November 13, 2007, GC Corp. advised Defendant that charges for GC Corp.'s fee and expenses in connection with work related to the San Carlos Project amounted to $168,287.17 and reminded Defendant that GC Corp. had declined the Jacona Project, which would have provided a profit of $1.5 million.

       i)        On or around November 14, 2007, Defendant again promised to pay GC Corp. for all services rendered by GC Corp. to date and further requested GC Corp. to continue working on the San Carlos Project.

       j)        On or around November 26, 2007, Defendant again promised to pay GC Corp. "ASAP."

       k)       Finally, on or around November 30, 2007, Defendant once again advised GC Corp. that he was working to send payment right away.

**ANSWER:**   Deny.

11.    None of Defendant's several promises to pay GC Corp. were conditional in any way whatsoever, and Defendant never represented to GC Corp. that he would only pay GC Corp. if he secured financing to complete the San Carlos Project.

**ANSWER:**   Deny.

12. Beginning in early December of 2007, Defendant has failed to respond to any electronic or telephone communication from GC Corp.

**ANSWER:**   Deny.

13.    To date, GC Corp. has not received any payment whatsoever for the planning and design work it performed for and provided to Defendant.

**ANSWER:**       This defendant admits that he has made any payment to plaintiff, but denies there was ever any agreement or obligation to do so.

## COUNT 1- BREACH OF CONTRACT

14.    GC Corp. re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above.

**ANSWER:**    This defendant adopts and incorporates its answers to paragraphs 1 through 13 above as its answer to paragraph 14 of count I of plaintiff's Complaint at Law.

15.    In 2007 GC Corp. and Defendant entered into an oral contract, confirmed by the parties' subsequent actions and representations, whereby Defendant retained GC Corp. to provide services in the planning and design of the San Carlos Project, and Defendant promised to pay GC Corp. for services rendered.

**ANSWER:**    Deny.

16.    In reliance thereon, in September, October and November of 2007, GC Corp. performed all of its promises required in accordance with the contract between GC Corp. and Defendant, including, but not limited to, conducting detailed market research, creating a thorough and complete business plan, preparing a conceptual budget, drafting detailed papers and designs needed to demonstrate building code compliance and to secure regulatory approval, working with the regulatory authorities in San Carlos to successfully secure approval for the job, and preparing numerous drawings and plans.

**ANSWER:**    Deny.

17.    On several occasions in November of 2007, GC Corp. contacted Defendant to request payment for the planning and design services rendered by GC Corp., pursuant to the contract between GC Corp. and Defendant.

**ANSWER:**    Deny.

18.    Also in November of 2007, Defendant confirmed his promise to pay GC Corp. for such services in accordance with the contract on several occasions.

**ANSWER:**    Deny.

19.    Beginning in early December of 2007, Defendant began ignoring all email communications and telephone calls from GC Corp. requesting payment.

**ANSWER:**    Deny.

20.    Defendant has never paid GC Corp. any amount for the planning and design service rendered by GC Corp. to Defendant.

**ANSWER:**     This defendant admits that he has not made any payment to plaintiff, but denies there was ever any agreement or obligation to do so.

21.     GC Corp.'s total fees and expenses for planning and design services rendered in furtherance of the contract in connection with the San Carlos Project amount to $177,431.75.

**ANSWER:**     Deny.

22.     Defendant breached the contract between GC Corp. and Defendant, despite his repeated subsequent promises to pay GC Corp. and despite having accepted all of the work product and benefit from GC Corp. in GC Corp's full and complete performance of its obligations under the contract, by failing and refusing to perform his obligation to pay GC Corp. for services rendered.

**ANSWER:**     Deny.

23.     As a result of Defendant's breach of the contract, GC Corp. has suffered damages in the amount of $177,431.75.

**ANSWER:**     Deny.

24.     GC Corp. damages were proximately caused by Defendant's breach of his contract with GC Corp.

**ANSWER:**     Deny.

25.     GC Corp. seeks judgment against the Defendant for compensatory and damages, plus interest, for Defendant's breach of contract.

**ANSWER:**     Deny.

WHEREFORE, defendant, Daniel Orozco, prays that judgment be entered in his favor and against plaintiff.

## COUNT II - BREACH OF CONTRACT IMPLIED IN FACT

26.     GC Corp. re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above.

**ANSWER:**     This defendant adopts and incorporates its answers to paragraphs 1 through 13 above as its answer to paragraph 26 of Count II of plaintiff's Complaint at Law.

5

27.    In 2007, Defendant requested, and GC Corp. agreed to provide services in the planning and design of the San Carlos Project, and Defendant promised to pay for services rendered.

**ANSWER:**    Deny.

28.    In September, October and November of 2007, GC Corp. performed all services it agreed to provide, including, but not limited to, conducting detailed market research, creating a thorough and complete business plan, preparing a conceptual budget, drafting detailed papers and designs needed to demonstrate building code compliance and to secure regulatory approval, working with the regulatory authorities in San Carlos to successfully secure approval for the job, and preparing numerous drawings and plans.

**ANSWER:**    Deny.

29.    On several occasions in November of 2007, GC Corp. contacted Defendant to request payment for the planning and design services rendered by GC Corp.

**ANSWER:**    This defendant admits that plaintiff requested payment of monies, but denies that such requests were for any work performed pursuant to an agreement or contract among the parties.

30.    Also in November of 2007, Defendant confirmed his promise to pay GC Corp. for such services on several occasions.

**ANSWER:**    Deny.

31.    Defendant's request that GC Corp. provide planning and design services for the San Carlos project, GC Corp.'s agreement to provide such services, GC Corp.'s subsequent performance on that promise, Defendant's promissory expression of his intent to be bound by his promise to pay, as well as all other facts and circumstances surrounding their relationship and communications created an implied contract under which Defendant is obligated to pay GC Corp. for the planning and design services it rendered.

**ANSWER:**    Deny.

32.    Beginning in early December of 2007, Defendant began ignoring all email communications and telephone calls from GC Corp. requesting payment.

**ANSWER:**    Deny.

33.    Defendant has never paid GC Corp. any amount for the planning and

design services rendered by GC Corp. to Defendant.

> **ANSWER:** This defendant admits that he has not made any payment to plaintiff, but denies there was ever any agreement or obligation to do so.

34.    GC Corp.'s total fees and expenses for planning and design services rendered in furtherance of the contract in connection with the San Carlos Project amount to $177,431.75.

> **ANSWER:** Deny.

35.    Defendant breached the contract between GC Corp. and Defendant, despite his repeated subsequent promises to pay GC Corp. and despite having accepted all of the work product and benefit from GC Corp. in GC Corp's full and complete performance of its obligations under the contract, by failing and refusing to perform his obligation to pay GC Corp. for services rendered.

> **ANSWER:** Deny.

36.    As a result of Defendant's breach of the contract, GC Corp. has suffered damages in the amount of $177,431.75.

> **ANSWER:** Deny.

37.    GC Corp. damages were proximately caused by Defendant's breach of his contract with GC Corp.

> **ANSWER:** Deny.

38.    GC Corp. seeks judgment against the Defendant for compensatory damages, plus interest, for Defendant's breach of contract.

> **ANSWER:** Deny.

WHEREFORE, defendant, Daniel Orozco, prays that judgment be entered in his favor and against plaintiff.

## COUNT III - BREACH OF CONTRACT IMPLIED IN LAW

39.    GC Corp. re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above.

> **ANSWER:** This defendant adopts and incorporates its answers to paragraphs 1 through 13 above as its answer to paragraph 39 of Count III of plaintiff's Complaint at Law.

7

40.    Defendant requested, voluntarily accepted and retained services and work product from GC Corp., including, but not limited to, detailed market research, a thorough and complete business plan, a conceptual budget, detailed papers and designs needed to demonstrate building code compliance and to secure regulatory approval, cooperation with the regulatory authorities in San Carlos to successfully secure approval for the job and numerous drawings and plans.

**ANSWER:**    Deny.

41.    GC Corp. expended significant money and resources in order to provide these services and benefits to Defendant with the reasonable expectation that it would be fully compensated for providing such services and benefits to Defendant.

**ANSWER:**    Deny.

42.    Defendant voluntarily received and retained these services and benefits from GC Corp. knowing that they were provided in relation to and in anticipation of Defendant's duty to pay for them.

**ANSWER:**    Deny.

43.    Defendant's receipt and retention of these services and benefits with knowledge of GC Corp.'s reasonable expectation that it would be compensated for providing them created a contract implied in law, under which Defendant had a duty to pay GC Corp.

**ANSWER:**    Deny.

44.    Defendant has never paid GC Corp. any amount for the services and benefits provided by GC Corp. to Defendant.

**ANSWER:**    This defendant admits that he has not made any payment to plaintiff, but denies there was ever any agreement or obligation to do so.

45.    By failing to pay GC Corp. for the services and benefits GC Corp. provided to Defendant, Defendant breached its contract implied in law with GC Corp.

**ANSWER:**    Deny.

46.    As a result of Defendant's breach of the contract, GC Corp. has suffered damages in the amount of $177,431.75.

**ANSWER:**    Deny.

47.    GC Corp. damages were proximately caused by Defendant's breach of his contract implied in law with GC Corp.

**ANSWER:**    Deny.

48.    GC Corp. seeks judgment against the Defendant for compensatory damages, plus interest, for Defendant's breach of contract.

**ANSWER:**    Deny.

WHEREFORE, defendant, Daniel Orozco, prays that judgment be entered in his favor and against plaintiff.


## COUNT IV- UNJUST ENRICHMENT

49.    GC Corp. re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above.

**ANSWER:**    This defendant adopts and incorporates its answers to paragraphs 1 through 13 above as its answer to paragraph 49 of Count IV of plaintiff's Complaint at Law.

50.    Defendant requested, voluntarily accepted and retained services and work product from GC Corp., including, but not limited to, detailed market research, a thorough and complete business plan, a conceptual budget, detailed papers and designs needed to demonstrate building code compliance and to secure regulatory approval, cooperation with the regulatory authorities in San Carlos to successfully secure approval for the job and numerous drawings and plans.

**ANSWER:**    Deny.

51.    GC Corp. expended significant money and resources in order to provide these services and benefits to Defendant with the reasonable expectation that it would be fully compensated for providing such services and benefits to Defendant.

**ANSWER:**    Deny.

52.    However, despite requesting that GC Corp. provide these services and benefits and despite making repeated promises to pay GC Corp. for them, Defendant has failed and refused to make such payment without any explanation whatsoever for such failure and refusal to pay.

**ANSWER:**    Deny.

53.    By his acceptance and retention of these services and benefits from GC

Corp., and because he has failed or refused to pay GC Corp. for providing these services and benefits, despite requesting them and promising to pay for them, Defendant has been unjustly enriched.

**ANSWER:** Deny.

54.    Defendant's receipt and retention of these services and benefits without payment to GC Corp. is unjust and inequitable.

**ANSWER:** Deny.

55.    Defendant's unjust enrichment has come to the detriment of GC Corp. in that GC Corp. has never been compensated for providing the services and benefits described herein to Defendant.

**ANSWER:** Deny.

WHEREFORE, defendant, Daniel Orozco, prays that judgment be entered in his favor and against plaintiff.

## COUNT V - QUANTUM MERUIT

56.    GC Corp. re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above.

**ANSWER:**    This defendant adopts and incorporates its answers to paragraphs 1 through 13 above as its answer to paragraph 56 of Count V of plaintiff's Complaint at Law.

57.    Defendant requested, voluntarily accepted and retained services and work product from GC Corp., including, but not limited to, detailed market research, a thorough and complete business plan, a conceptual budget, detailed papers and designs needed to demonstrate building code compliance and to secure regulatory approval, cooperation with the regulatory authorities in San Carlos to successfully secure approval for the job and numerous drawings and plans.

**ANSWER:** Deny.

58.    GC Corp. expended significant money and resources in order to provide these services and benefits to Defendant with the reasonable expectation that it would be fully compensated for providing such services and benefits to Defendant.

**ANSWER:** Deny.

59.    However, despite requesting that GC Corp. provide these services and benefits and despite making repeated promises to pay GC Corp. for them, Defendant

has failed and refused to make such payment without any explanation whatsoever for such failure and refusal to pay.

**ANSWER:**    Deny.

60.    Because Defendant requested that GC Corp. provided these services and benefits and promised to pay for them, GC Corp. is entitled to the reasonable value of the work it performed to provide Defendant with the services and benefits he requested.

**ANSWER:**    Deny.

61.    GC Corp. has advised Defendant of the reasonable value of the work it performed to provide Defendant with the services and benefits he requested, and GC Corp. has provided Defendant with records of its work, including fees and expenses.

**ANSWER:**    Deny.

62.    Nonetheless, despite having agreed to pay GC Corp. for those services and benefits, Defendant has failed or otherwise refused to do so, without any explanation whatsoever.

**ANSWER:**    Deny.

63.    Defendant's receipt and retention of these services and benefits without payment to GC Corp. is unjust and inequitable.

**ANSWER:**    Deny.

WHEREFORE, defendant, Daniel Orozco, prays that judgment be entered in his favor and against plaintiff.

## COUNT VI- FRAUDULENT INDUCEMENT

64.    GC Corp. re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above.

**ANSWER:**    This defendant adopts and incorporates its answers to paragraphs 1 through 13 above as its answer to paragraph 64 of Count VI of plaintiff's Complaint at Law.

65.    GC Corp. is in the business of managing all aspects of construction management, from initial planning, to design, and through the completion of construction.

**ANSWER:**    This defendant lacks sufficient knowledge to truthfully

admit or deny this allegation.

66.     On or about October 25, 2007, GC Corp. advised Defendant that GC Corp. had been offered an opportunity to act as Construction Manager for the Jacona Project and that GC Corp. would earn approximately $1.5 million if it accepted construction management responsibilities for the Jacona Project.

> **ANSWER:**   This defendant admits there was contact with plaintiff on October 25, 2007, but denies that it is properly summarized in paragraph 66.

67.     On October 25, 2007, GC Corp. advised Defendant that GC Corp. could not properly staff the Jacona Project and the San Carlos Project at the same time, and inquired of Defendant whether the San Carlos Project was properly financed and would go forward.

> **ANSWER:**   This defendant admits there was contact with plaintiff on October 25, 2007, but denies that it is properly summarized in paragraph 67.

68.     Defendant assured GC Corp. that the San Carlos Project would be well-financed and that it would go forward.

> **ANSWER:**   Deny.

69.     On or about October 25, 2007, GC Corp. further requested that Defendant execute or cause to be executed a Letter of Intent, whereby Defendant would commit to retain GC Corp. to provide all construction management services for the San Carlos Project through the completion of construction, and Defendant agreed to do so.

> **ANSWER:**   This defendant admits that plaintiff requested that he sign a Letter of Intent, but denies that he ever agreed to do so with the terms set forth by plaintiff.

70. Defendant knowingly, intentionally, fraudulently and deliberately made false statements and misrepresentations to GC Corp., including the following:
   a) On or around September 22, 2007, Defendant told GC Corp. he was ready to close on property on October 15, 2007, and that the investors were "ready to open the vault doors."
   b) On or around October 25, 2007, Defendant told GC Corp. that the San Carlos Project was moving forward.
   c) On or about October 25, 2007, Defendant told GC Corp. to continue its work to the exclusion of other business opportunities, specifically including the Jacona Project because the San Carlos Project would go forward.

    d) Defendant told GC Corp. he would sign or cause to be signed a Letter of Intent, agreeing to retain GC Corp. to provide all construction management services for the San Carlos Project through the completion of construction.

    e) On several occasions, Defendant told GC Corp. that proper funding was essentially in place to finance the completion of the San Carlos Project.

**ANSWER:**   Deny.

71.   Defendant knew these representations and statements were false, and Defendant knew or should have known that GC Corp.'s reliance on them would cause GC Corp. substantial harm.

**ANSWER:**   Deny.

72.   Defendant knew and intended for GC Corp. to rely on these misrepresentations, which reliance Defendant knew and intended would cause GC Corp. to lose revenue and profits from the Jacona Project.

**ANSWER:**   Deny.

73.   At the time of some or all of these deliberate misrepresentations and of Defendant's false promises to pay GC Corp. for services rendered, Defendant knew or should have known that commencement of construction for the San Carlos Project was unlikely, because he had failed to secure or maintain adequate financing for the San Carlos Project, and Defendant intentionally, fraudulently and deliberately concealed the status of funding from GC Corp. and misled GC Corp. to believe that funding was already secure or was imminent.

**ANSWER:**   Deny.

74.   Defendant's representations were made with the intent and purpose of inducing GC Corp. to continue its performance on the San Carlos Project to GC Corp.'s detriment, proximately causing substantial actual and consequential damages to GC Corp.

**ANSWER:**   Deny.

75.   As a result of these fraudulent statements and misrepresentations, and in reliance thereon, GC Corp., to its detriment, was fraudulently induced by Defendant to continue working on the San Carlos Project and to decline the offer it had received to act as Construction Manager on the Jacona Project.

**ANSWER:**   Deny.

76.    Because GC Corp. informed Defendants of the offer it had received to act as Construction Manager on the Jacona Project, Defendants knew or should have reasonably foreseen that GC Corp. would suffer substantial damages as a direct consequence of Defendant's fraudulent inducement.

**ANSWER:**    Deny.

77.    Defendant's intentional misrepresentations, concealment, suppression and omission of material facts were committed with the deliberate intent to induce GC Corp. to continue working on the San Carlos Project and to decline its opportunity to work on the Jacona Project.

**ANSWER:**    Deny.

78. By reason of Defendant's acts, and as a proximate cause thereof, GC Corp. has suffered significant actual and consequential damages.

**ANSWER:**    Deny.

79.    GC Corp. seeks compensatory and consequential damages incurred as a proximate result of Defendant's fraudulent inducement.

**ANSWER:**    Deny.

WHEREFORE, defendant, Daniel Orozco, prays that judgment be entered in his favor and against plaintiff.

Respectfully submitted,

By: _____
One of the Attorneys for Defendant,
Daniel Orozco

Michael R. Slovis
Kenneth D. Seale
CUNNINGHAM, MEYER & VEDRINE, P.C.
111 West Washington Street - Suite 937
Chicago, Illinois 60602
(312) 578-0049
Attny No. 39107

14